UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | NO. 3:02CR95(AHN) |
| | : | |
| KEVIN CUNNINGHAM | : | March 31, 2008 |

**GOVERNMENT'S NOTICE REGARDING MOTION TO REDUCE
SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)**

On April 25, 2003, the defendant, Kevin Cunningham, was sentenced to 120 months of incarceration. By motion filed on March 25, 2008, defendant seeks relief based upon the changes to the crack cocaine guidelines which were passed by the Sentencing Commission on November 1, 2007. Because he was sentenced to the statutory minimum sentence of 120, he is ineligible for a reduction. Accordingly, the Government respectfully submits that the Court should leave the original sentence undisturbed.

**I.     BACKGROUND**

Beginning in the autumn of 2001, the New Haven Organized Crime Drug Enforcement Task Force, ("Task Force"), initiated an investigation into suspected distribution of cocaine base/"crack" in the New Haven area by an organization headed by Charles Henry Brewer, III. In its initial stages, the investigation took the form of purchases of "crack" from suspected members of the distribution organization, debriefing of confidential informants and historical review of New Haven police reports. These initial investigative steps disclosed the existence of a "crack" cocaine trafficking organization which was supplied with redistribution quantities of "crack" on an almost weekly basis for distribution in the greater New Haven area.

In October 2001, controlled purchases of "crack" were made from the defendant and his

cousin, Stacy Bynum. Both men were believed to be "crack" dealers in the New Haven area who were supplied by the Brewer organization. Thereafter, members of the Task Force sought and obtained a state search warrant for the residence of the defendant, which was also the sometime home of Bynum. The search yielded redistribution quantities of "crack" and heroin, as well as two firearms and ammunition. Both men were arrested on state narcotics charges.

During the spring of 2002, physical surveillance was initiated and intensified, and on March 5, 2002, the Government sought and obtained authorization from the District Court to intercept telephone conversations occurring over cellular telephones used by Charles Brewer, III and Kevin James Cunningham. The intercepts and attendant physical surveillance confirmed that Brewer was obtaining redistribution quantities of "crack" from a New York source who would have the drugs transported to Brewer in New Haven by livery car, and that Cunningham was the primary local distributor for Brewer. The intercepts also established that Everett Thompson was another local distributor for Brewer, that Bynum and the defendant continued to be supplied with "crack" by Brewer, that other individuals were purchasing "crack" from Brewer in redistribution quantities, including but not limited to Jean Threatt, Larry Gibbs, Tyrus Garner, Nicole Buonome and Kenneth Bell, and that they were arranging for these purchases in telephone calls intercepted over Cunningham's cellular telephone.

On March 8, 2002, Garner contacted Cunningham by telephone to arrange a purchase of a quantity of "crack." Based on the intercepted call, surveillance was established in the area of the subsequent transaction, and, immediately following the meeting between Garner and Cunningham, Garner was found to be in possession of approximately 8 grams of "crack."

On March 20, 2002, Buonome and Bell each contacted Cunningham by telephone to arrange

purchases of quantities of "crack." Based on the intercepted calls, surveillance was established in the area of each of the subsequent transactions, and, immediately following the surveilled meetings with Cunningham on that date, both Buonome and Bell were found to be in possession of quantities of "crack."

On March 23 and 24, 2002, calls were intercepted over Brewer's telephone which indicated that a quantity of "crack" would be transported to New Haven on the morning of March 24, 2002, Palm Sunday. Based on the intercepted calls, surveillance was established at a pharmacy located at the intersection of York and George Streets in New Haven that same morning. Members of the Task Force observed a black Lincoln livery vehicle with New York plates parked in the lot of the pharmacy. Shortly thereafter, Cunningham arrived, and Cunningham and an Hispanic male associated with the livery vehicle had a brief conversation. At this point, members of the Task Force converged on the lot. The livery driver, Jose Luciano, surrendered without incident, and within his vehicle was discovered some 250 grams of "crack." Cunningham fled the scene and engaged members of the Task Force and New Haven police officers in a high-speed chase. The chase ended when Cunningham abandoned his vehicle and fled into and up the center aisle of the Trinity Temple Church of God and Christ on Dixwell Avenue, where Bishop Charles Brewer Jr., the father of Charles Brewer III, was officiating over a Palm Sunday service. Agents seized approximately five grams of "crack" from Cunningham at the time of his arrest.

On April 12, 2002, Jean Threatt was arrested at her residence on a federal warrant in which she was charged with violation of 21 U.S.C. § 843(b). A consent search conducted in connection with her arrest disclosed in excess of three ounces of "crack."

On May 7, 2002, a federal grand jury sitting in Bridgeport returned a twelve-count

superseding indictment charging 10 individuals with crack distribution conspiracy and related offenses. The defendant was charged in Count One of the indictment with conspiracy to distribute 50 grams or more of crack. The defendant was arrested on March 25, 2002 and has been in custody since.

January 7, 2003, the defendant entered a plea of guilty to Count One of the indictment.

The Pre-Sentence Report ("PSR") calculated the defendant's base offense level as 38. A three-level reduction was afforded for acceptance of responsibility. With a total offense level of 35 and a Criminal History Category II, his Guideline range was determined to be 188-235 months, with a mandatory minimum sentence of 120 months.

On April 25, 2003, this Court imposed a term of incarceration of 120 months. In doing so, the Court adopted the calculations of the PSR, then departed downward on motion of the defendant to the mandatory minimum of 120 months.

## II.   DISCUSSION

On November 1, 2007, the Sentencing Commission amended the cocaine base guidelines provided for under U.S.S.G. § 2D1.1(c). The amendment in question is Amendment 706, effective November 1, 2007, which reduced the base offense level for most crack cocaine offenses.[1] In Amendment 706, the Commission generally reduced by two levels the offense levels applicable to crack cocaine offenses. The Commission reasoned that, putting aside its stated criticism of the 100:1 ratio applied by Congress to powder cocaine and crack cocaine offenses in setting statutory mandatory minimum penalties, the Commission could respect those mandatory penalties while still

---

[1] Amendment 706 was further amended in the technical and conforming amendments set forth in Amendment 711, also effective November 1, 2007.

reducing the offense levels for crack offenses. See U.S.S.G., Supplement to App. C, Amend. 706. Previously, the Commission had set the crack offense levels in Section 2D1.1 above the range which included the mandatory minimum sentence. Under the amendment, the Commission has set the offense levels so that the resulting guideline range includes the mandatory minimum penalty triggered by that amount, and then set corresponding offense levels for quantities which fall below, between, or above quantities which trigger statutory mandatory minimum penalties. For example, a trafficking offense involving five grams of crack cocaine requires a statutory mandatory minimum sentence of five years imprisonment. See 21 U.S.C. § 841(b)(1)(B). Therefore, the revised guideline applies an offense level of 24 to a quantity of cocaine base ("crack") of at least five grams but less than 20 grams; at criminal history category I, this level produces a range of 51-63 months (encompassing the 60-month mandatory minimum).

The final result of the amendment is a reduction of two levels for each of the ranges set in the guidelines for crack offenses. At the high end, the guideline previously applied offense level 38 to any quantity of crack of 1.5 kilograms or more. That offense level now applies to a quantity of 4.5 kilograms or more; a quantity of at least 1.5 kilograms but less than 4.5 kilograms falls in offense level 36. At the low end, the guideline previously assigned level 12 to a quantity of less than 250 milligrams. That offense level now applies to a quantity of less than 500 milligrams.

In this case, application of the amendment would not affect the defendant's sentence, as the Court imposed the statutory mandatory minimum term of 120 months of imprisonment.

On December 11, 2007, the Commission added Amendment 706 to the list of amendments stated in Section 1B1.10(c) which may be applied retroactively, effective March 3, 2008. Congress has delegated to the Sentencing Commission the sole authority to permit the retroactive application

of a guideline reduction, and no court may alter an otherwise final sentence on the basis of such a retroactive guideline unless the Sentencing Commission expressly permits it. See, e.g., United States v. Perez, 129 F.3d 255, 259 (2d Cir. 1997); United States v. Thompson, 70 F.3d 279, 281 (3d Cir. 1995); United States v. McHan, 386 F.3d 620, 622 (4th Cir. 2004); United States v. Drath, 89 F.3d 216, 218 (5th Cir. 1996); United States v. Dullen, 15 F.3d 68, 70-71 (6th Cir. 1994); Ebbole v. United States, 8 F.3d 530, 539 (7th Cir. 1993); United States v. Wyatt, 115 F.3d 606, 608-09 (8th Cir. 1997); United States v. Cueto, 9 F.3d 1438, 1441 (9th Cir. 1993); United States v. Avila, 997 F.2d 767, 768 (10th Cir. 1993); United States v. Armstrong, 347 F.3d 905, 909 (11th Cir. 2003); see also Pierre Louie v. United States, 2008 WL 114468 at *7 (D. Me. Jan. 1, 2008) (amendment 706 becomes retroactive on March 3, 2008 "meaning, that as of that date, impacted defendants serving eligible sentences may be able to move for a sentence reduction pursuant to 18 U.S.C. § 3582(c)"). Indeed, the United States District Court for the Southern District of Illinois has stayed all Section 3582(c) motions based on Amendment 706 until March 3, 2008. See United States v. Wommack, 2008 WL 78782 at *1 (S.D. Ill. Jan. 7, 2008).[2]

Section 3582(c)(2) provides:

[I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing

---

[2]The Sentencing Commission imposed the delay in light of the enormous burdens that retroactive application of the crack cocaine amendments, in tens of thousands of cases, will impose on the courts, prison officials, probation officers, prosecutors, and others. The delayed implementation of retroactivity permits all officials to assure the orderly handling of these many cases and prisoners. Delayed implementation also allows for Congressional review of the Commission's decision and Congress may choose to reject or alter the Commission's decision.

Commission.

Id. The Court may act on this motion without the defendant's presence. U.S.S.G. § 1B1.10(a)(3) clearly states that "proceedings under 18 U.S.C. § 3582(c)(2) and this policy statement do not constitute a full resentencing of the defendant." In addition, Fed. R. Crim. P. 43(b)(4) explicitly provides that a defendant "need not be present" when the proceeding involves a reduction of sentence under 18 U.S.C. § 3582(c). Likewise, given the rules and considering the burdens imposed on producing prisoners incarcerated within the Bureau of Prisons, the federal courts of appeal to address this issue have uniformly held that a defendant has no constitutional or statutory right to be present in connection with a motion filed under Section 3582(c). See, e.g., Anderson v. United States, 241 Fed. Appx. 625, 629 (11th Cir. July 18, 2007) (unpublished) ("Under Federal Rule of Criminal Procedure 43(b)(4), a defendant's presence at a § 3582(c) sentence correction proceeding is not required") (emphasis in original); United States v. Legree, 205 F.3d 724, 730 (4th Cir. 2000) (same; hearing not required); United States v. Tidwell, 178 F.3d 946, 948-949 (7th Cir. 1999) (same, noting that "a proceeding under 18 U.S.C. § 3582(c) is not a do-over of an original sentencing proceeding where a defendant is cloaked in rights mandated by statutory law and the Constitution").

Although the defendant may qualify for a reduction in sentence under Section 3582(c)(2) and the applicable policy statements of the Commission, a reduction of sentence is not automatic. This Court's discretion is set forth in Section 3582(c)(2) itself, which provides: "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Thus, "[t]he grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary," even when the guideline range is actually reduced.

United States v. Vautier, 144 F.3d 756, 760 (11th Cir. 1998);[3] see also United States v. Colon, 961 F.2d 41, 46 (2d Cir. 1992)(stating that district court, in the first instance, had to determine to what extent, if any, it has authority to apply retroactive amendment and whether it wishes to exercise its discretion to do so).

Similarly, section 1B1.10 directs that "the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining . . . whether a reduction in the defendant's term of imprisonment is warranted." Id., comment. (n. 1(B)(I)); see also U.S.S.G. § 1B1.10, comment. (backgr'd) ("The authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right."). All courts are in accord on this point. See United States v. Whitebird, 55 F.3d 1007, 1010 (5th Cir. 1995) (district court permissibly declined to reduce sentence); United States v. Ursery, 109 F.3d 1129, 1137 (6th Cir. 1997); United States v. Coohey, 11 F.3d 97, 101 (8th Cir. 1993); United States v. Wales, 977 F.2d 1323, 1327-28 (9th Cir. 1992); United States v. Mueller, 27 F.3d 494, 497 n.5 (10th Cir. 1994).

"Thus, reading § 3582(c)(2) and the Sentencing Guidelines together, the district court must make two distinct determinations before deciding whether to reduce a defendant's sentence under § 3582(c)(2)." Vautier, 144 F.3d at 760. First, Section 1B1.10(b) directs:

---

[3] In Vautier, the Eleventh Circuit held that the district court did not abuse its discretion in denying a Section 3582(c)(2) motion for reduction of sentence, upon considering the 3553(a) factors. The district court denied the motion, stating that "in light of this Court's expressed concern of the defendant's demonstrated violence and factoring all of the other considerations that went into the establishment of this defendant's sentence, the same sentence would have been imposed under the current amended guidelines." Vautier, 144 F.3d at 759.

> In determining whether, and to what extent, a reduction in the term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been in effect at the time the defendant was sentenced . . . .

Id. In other words, "the court must substitute the amended guideline range for the originally applied guideline range and determine what sentence it would have imposed. In undertaking this first step, only the amended guideline range is changed. All other guideline application decisions made during the original sentencing remain intact." Vautier, 144 F.3d at 760.

Then, in the second step, "in light of the conclusion reached in the first step, the court must consider the factors listed in § 3553(a) and determine whether or not to reduce the defendant's original sentence." Id.[4] Subject to the limits set forth in Section 1B1.10(b), the Court may consider all pertinent information in applying the Section 3553(a) factors and determining whether and by how much to reduce the defendant's sentence. In particular, the Court must consider public safety considerations, and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative. Revised application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." Revised application note 1(B)(iii)

---

[4] The Eighth Circuit has also endorsed and explained at length this two-step procedure. United States v. Hasan, 245 F.3d 682, 684-85 (8th Cir. 2001) (en banc), citing United States v. Wyatt, 115 F.3d 606 (8th Cir. 1997). In United States v. Legree, 205 F.3d 724, 728 (4th Cir. 2000), however, the court stated that it disagreed with the need for or utility of the two-step method. The essence of its ruling was that the district court's proper consideration of the factors relevant to a Section 3582(c)(2) reduction of sentence, including consideration of the Section 3553(a) factors, may be presumed from the record. The court did not criticize the underlying proposition that a trial court in fact should consider the guideline range as affected only by the guideline amendment, and should then apply the Section 3553(a) factors in determining whether to reduce the sentence. See id.

further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment." The application note explains that these factors are relevant in determining whether and by how much to reduce a sentence, but only within the limits set forth in Section 1B1.10(b).

If this Court decides to reduce a defendant's sentence, the extent of the reduction is strictly limited. Congress delegated to the Sentencing Commission the authority to determine to what extent a sentence may be reduced. See 18 U.S.C. § 3582(c)(2); 28 U.S.C. § 994(u). The Commission, in turn, directed in Section 1B1.10(b) that, with one exception (where the defendant earlier received a below-guideline sentence), "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1)." U.S.S.G. § 1B1.10(b)(2)(A). An application note adds: "Under subsection (b)(2), the amended guideline range determined under subsection (b)(1) and the term of imprisonment already served by the defendant limit the extent to which the court may reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement. Specifically, if the original term of imprisonment imposed was within the guideline range applicable to the defendant at the time of sentencing, the court shall not reduce the defendant's term of imprisonment to a term that is less than the minimum term of imprisonment provided by the amended guideline range determined under subsection (b)(1)." U.S.S.G. § 1B1.10 comment. (n. 3).[5] Thus, the Court may not reduce the sentence below the range provided by the

---

[5] Application note 3 provides an example of this rule:

For example, in a case in which: (1) the guideline range applicable to the defendant at the time of sentencing was 41 to 51 months; (2) the original term of imprisonment imposed was 41 months; and (3) the amended guideline range determined under subsection (b)(1)

amended guideline, and "in no case . . . shall the term of imprisonment be reduced below time served." U.S.S.G. § 1B1.10, comment. (n.3).

III. **CONCLUSION**

The Government respectfully suggests that the Court should leave the original sentence undisturbed.

        Respectfully submitted,

        KEVIN J. O'CONNOR
        UNITED STATES ATTORNEY


        H. GORDON HALL
        ASSISTANT UNITED STATES ATTORNEY
        Federal Bar No. ct05153
        157 Church Street
        New Haven, Connecticut  06510
        (203) 821-3700
        Gordon.hall@usdoj.gov

---

is 30 to 37 months, the court shall not reduce the defendant's term of imprisonment to a term less than 30 months.

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 31st day of March, 2008, I caused a copy of the foregoing Notice to be sent by first-class mail, postage prepaid, to the following:

    Sarah Merriam
    Assistant Federal Defender
    265 Church Street, Suite 702
    New Haven, CT 06510

    Warren Maxwell
    Deputy Chief United States Probation Officer
    United States Probation Office
    157 Church Street
    New Haven, CT 06510

    Kevin James Cunningham
    Reg. No. 14609-056
    FCI La Tuna
    P.O. Box 3000
    Anthony, NM 88021

---

    H. GORDON HALL
    ASSISTANT UNITED STATES ATTORNEY